MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI
SINGAPORE, TOKYO, WASHINGTON, D.C.

June 12, 2020

Writer's Direct Contact
+1 (415) 268.6538
JTaylor@mofo.com

**Via ECF**

Magistrate Judge Thomas S. Hixson
U.S. District Court for the Northern District of California
450 Golden Gate Avenue, 15th Floor
San Francisco, CA 94102

**Re:** *Lambda Labs, Inc. v. Lambda, Inc.*, **Case No. 4:19-cv-04060-JST (TSH) – Joint Discovery Letter Brief Concerning ESI Custodians and What Data Sources To Collect From**

Dear Magistrate Judge Hixson:

Per the Court's Order (ECF No. 69), the Parties submit this joint letter brief concerning ESI custodians and what data sources to collect from.

MORRISON | FOERSTER

Magistrate Judge Thomas S. Hixson
June 12, 2020
Page Two

**Lambda Labs' Position**

*Document custodians*.  From the beginning, Lambda Labs has focused on identifying types of relevant documents that should be produced by the parties, rather than on identifying an arbitrary number of custodians without knowing whether that number will be sufficient to collect relevant documents.  Further, Lambda Labs has agreed to collect documents from every individual requested by Lambda School to date, including all of the highest level employees of Lambda Labs,[1] and it will add custodians if Lambda School requests them and they appear to have relevant documents.  By contrast, Lambda School seeks to impose an arbitrary numerical limit on custodians, initially three, then five, and finally five to seven (with a showing of good cause required to add the sixth and seventh custodians)—a new proposal it made for the first time in its draft of this joint brief.  Each proposal is insufficient to capture relevant materials of which Lambda Labs is *already* aware, let alone capture additional materials that may be identified in the course of discovery.

Specifically, Lambda Labs identified seven categories of relevant documents that should be collected and asked Lambda School to collect from appropriate custodians for those documents.  To the extent that the five custodians from whom Lambda School has agreed to collect documents would have these documents,[2] Lambda School will not need to add custodians to collect them.  On the other hand, if the already identified custodians do not have these categories of documents, the number of custodians will need to increase.  Unfortunately, Lambda School has not provided Lambda Labs with any information regarding where these documents are stored at Lambda School, so Lambda Labs *cannot* know the specific number of required custodians.

Further, Lambda Labs has identified two additional custodians from whom it believes Lambda School should collect, and, as the Court advised, seeks a "safety valve" (without a separate requirement for a "good cause" showing) in case additional materials are identified during discovery.  Each of these issues is detailed below.

*First*, Lambda Labs seeks documents in seven relevant categories for which Lambda School has refused to investigate or identify potential custodians:

1. The individual most responsible for career planning and student placement

---

[1] Lambda Labs has agreed to collect documents from Stephen Balaban (Co-Founder and CEO of Lambda Labs), Michael Balaban (Co-Founder), Remy Guercio (Head of Marketing), Robert Brooks (Director of Sales), and Mitesh Agrawal (Sales Engineer).
[2] Lambda School has agreed to collect documents from Austen Allred (Co-Founder and CEO of Lambda School), Ben Nelson (Co-Founder), Trevor McKendrick (Chief of Staff), Adam Grenier (former Vice President of Product and Marketing), and Lindsey Monroe (Director – Creative).

MORRISON | FOERSTER

Magistrate Judge Thomas S. Hixson
June 12, 2020
Page Three

2. The individual most responsible for Lambda School's student outcome reports

3. The individual most responsible for addressing student complaints

4. The individual most responsible for addressing employee complaints

5. The individual most responsible for Lambda School's trademark filings

6. The individual most responsible for Lambda School's "Lambda Labs" program

7. The individual most knowledgeable about Lambda School's use of the Red Lambda marks

Each topic relates directly to the trademark infringement inquiry and the harm that Lambda School has caused to Lambda Labs' trademark goodwill. Lambda School has been the subject of repeated negative reporting related to (among other topics) its student employment placement rates (topic 1), potential misrepresentations about those placement rates in its published student outcome reports (topic 2), and complaints from Lambda School students and employees regarding the quality of its services and the overall Lambda School experience (topics 3 and 4). These negative stories, and the facts that underlie them, bear directly on the harm that Lambda School has caused to Lambda Labs' hard-earned trademark goodwill because Lambda School is damaging the "Lambda" name, which is used by both parties in this case.

Lambda Labs further seeks non-privileged documents related to Lambda School's failed trademark applications for the Lambda name and its logo (topic 5), which the USPTO rejected in part due to a likelihood of confusion with *Lambda Labs'* registered marks. These documents bear on Lambda School's knowledge of the Lambda Labs marks and may establish that its ongoing infringement of those marks is willful. Finally, Lambda Labs seeks documents regarding Lambda School's use of the name "Lambda Labs" to describe one of its programs (topic 6), which is another example of Lambda School's infringement of the Lambda Labs marks, and on Lambda School's ownership and use of the "Red Lambda" marks (topic 7), which it has asserted as a defense to Lambda Labs' infringement claims and the basis for its trademark infringement counterclaims.

*Second*, Lambda Labs seeks collections from two specific custodians it has identified to Lambda School: *Caleb Hicks* (President of Lambda School), and *Sabrina Baez* (former Head of Career Services). Both individuals have held leadership positions at Lambda School and are likely to possess documents that bear on (among other topics) Lambda School's goods and services and the harm that Lambda School has caused to Lambda Labs' trademark goodwill through its infringement. Mr. Hicks oversees the curriculum at the school, which has been the subject of frequent student complaints and negative reporting. Similarly,

MORRISON | FOERSTER

Magistrate Judge Thomas S. Hixson
June 12, 2020
Page Four

Lambda School's career services program (which Ms. Baez formerly oversaw) has been the subject of negative reporting and accusations of potential misrepresentations regarding student employment statistics,[3] and Lambda School received further negative press attention surrounding Ms. Baez's departure from the company.[4]

*Third*, as the Court indicated at the last hearing, it is appropriate to allow for a "safety net" of a small number of additional custodians to account for any new relevant topics that may arise during the course of discovery.  Lambda Labs believes two such "safety net" custodians would be sufficient.

Together, these facts demonstrate that up to eleven additional custodians will bear relevant discovery and is proportional to the needs of this case.  On the other hand, Lambda School's arbitrary insistence on only five to seven *total* custodians bears no relation to the facts or the needs of this case, and it makes no effort to explain how Lambda Labs would be able to obtain the materials relevant to proving and defending the claims and counterclaims if it is limited to only five custodians.  Lambda Labs respectfully requests that the Court order *up to* eleven additional custodians above the five from whom Lambda School has already agreed to collect, and further order Lambda School to investigate and identify custodians for the seven categories for which it has so far refused to identify custodians.  To the extent that the already identified custodians would be custodians for the seven categories identified by Lambda Labs, the resulting final number of additional custodians required will decrease.

*Collection of data sources*.  Lambda Labs believes there is no dispute on this topic to address in this brief.  The parties are working together to identify and disclose the "centralized" sources from which they intend to produce documents, and any remaining disputes will be addressed in the other letter briefs ordered by the Court.

*****

*Reply to Lambda School's position*.  Rather than address Lambda Labs' explanations of why the discovery it seeks is necessary for and proportional to the needs of this case,[5] Lambda School inflates the number of custodians and sources it claims Lambda Labs is demanding to suggest Lambda Labs is being unreasonable with its approach of identifying categories of relevant documents instead of a specific number of custodians.  For example, Lambda School claims Lambda Labs has demanded sixteen custodians, or even eighteen.[6]

---

[3] *See, e.g.*, https://www.theverge.com/2020/2/11/21131848/lambda-school-coding-bootcamp-isa-tuition-cost-free.
[4] https://www.theverge.com/2020/3/9/21166640/lambda-school-former-employee-threat-coding-bootcamp-nondisclosure
[5] The only topics Lambda School addresses are the subject of further briefing already ordered by the Court: student and employee complaints and Lambda School's student outcome reports.  That brief is due on June 26.
[6] Lambda School even adds *third parties* (former employees) to its count of "Lambda School custodians."

MORRISON | FOERSTER

Magistrate Judge Thomas S. Hixson
June 12, 2020
Page Five

Not true. Lambda Labs identified a series of relevant subject matters and asked Lambda School to identify the individuals who possess documents in those areas. It refused. Had it not, the parties would at least have clarity on the actual number of custodians at issue, and might even have reached an agreement on producing documents from them. Further, as explained in the joint letter brief on ESI phasing (also being filed today), Lambda School's claim that Lambda Labs has demanded collection from twenty-two sources is similarly greatly inflated, both double-counting sources and ignoring that several sources are expressly limited to a single custodian—the *founder* of Lambda School, Austen Allred—and will not implicate other custodians.

Lambda School also misrepresents the history of the parties' discussions on the appropriate number of custodians. Lambda Labs did not focus its investigation on a preconceived *number* of custodians, which is what Lambda School sought. Rather, Lambda Labs focused on identifying individuals most likely to possess relevant documents at the company and initially identified three—Lambda Labs co-founders Stephen Balaban and Michael Balaban, and the head of marketing, Remy Guercio—which happened to correspond with the initial number that Lambda School proposed for custodians. Lambda School subsequently requested collections from two more Lambda Labs' employees. Lambda Labs agreed. At no time did Lambda Labs agree that a specific number of custodians (three, five, or another number) would be sufficient to meet *Lambda School's* obligations to produce relevant discovery. Moreover, while Lambda Labs initially expressed optimism that some number of custodians around five *could* be sufficient, it subsequently became clear that it would not be sufficient because Lambda Labs received no assurance that the five identified custodians would be sufficient sources for categories of documents relevant to this case.[7]

Finally, Lambda School raises an objection regarding a supposed "apex" witness for the first time in its portion of this brief. As an initial matter, the Court should disregard that argument as unripe because the parties have never discussed objections based upon alleged "apex" witnesses. In fact, both parties have already agreed to collect documents from their highest-level apex witnesses—their respective CEOs. But Lambda School's argument also makes no sense. The individual with respect to whom Lambda School raises the objection (Caleb Hicks, Lambda School's president) appears to report to Austen Allred, the co-founder and CEO of Lambda School, whose documents Lambda School has already agreed to produce. An "apex" objection for an individual who reports to higher individuals whose documents are being collected is not supported by the authorities Lambda School cites.

---

[7] Lambda School conflates *preservation* and *production*, as it has throughout meet and confer. Its June 8 offer was to *preserve* materials for *one* individual per topic area, not to *produce* documents from one custodian per topic area. Further, its claim that Lambda Labs' requests regarding "complaints" are too broad for it even to *investigate* is not ripe because its responses were just served today. That objection should be addressed in the context of specific RFPs if Lambda School maintains the objection after further meet and confer.

MORRISON | FOERSTER

Magistrate Judge Thomas S. Hixson
June 12, 2020
Page Six

**Lambda School's Position**

This is a simple trademark case between a school and a technology company. It does not warrant searching datasources from sixteen custodians. As proposed during meet and confer, five to seven custodians is more than sufficient given the claims at issue. Labs cites no examples of any other cases where the parties either agreed to 16 custodians or they were ordered to search and collect from 16 custodians. The fundamental disagreement between the parties is Labs wants a iterative, free-flowing ESI approach with no limits and School wants limits with the ability to seek additional custodians and datasources if necessary after having a chance to review information from the most relevant custodians and datasources. For the reasons discussed below, Labs request is not proportional to the needs of the case, particularly with only six months to complete fact discovery. Five named custodians with two unnamed custodians as a "safety valve" for good cause shown is more than sufficient for both parties given the claims in this case. Should the Court order that the School must search more than 5-7 custodians, then Labs should have to pay the School's costs and fees.

Legal Standard

F.R.C.P. 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* However, the parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes. Fed. R. Civ. P. 26 advisory committee notes (2015 amendments). The Court may also rely on the Model ESI Order for Patent Cases in the Northern District of California as a guide, which requires additional custodians beyond five upon showing a distinct need based on the size, complexity, and issues of the specific case.

*First*, Labs latest request indicates that it refuses to comply with its responsibility to consider proportionality. Labs raised this request for 16 custodians for the first time on June 9, 2020. During the prior proposed ESI stipulation negotiations, Lambda Labs agreed that three custodians was sufficient. It then reversed its position and argued there should be no limits. It then pivoted again and asked that the School collect from five custodians. When the School agreed, Labs changed its mind again and wanted one or two additional custodians as its "safety valve." *See ECF* 61 at 12:14-18 ("If Lambda School is taking the position that it will not agree to more than five custodians under any circumstances, then the Court should order Lambda School to continue these discussions in good faith and to add additional custodians to capture sources of relevant information if needed. Lambda Labs believes that if any additional custodians are required to capture these sources, it is likely to be no more than

MORRISON | FOERSTER

Magistrate Judge Thomas S. Hixson
June 12, 2020
Page Seven

one or two.")  Labs CMC representations are also consistent with Labs request on May 15, 2020 for the following specific custodians:  Austen Allred, Adam Grenier, Ben Nelson, Caleb Hicks, Trevor McKendrick and Jocelyn Robancho.  Now Labs is adding Sabrina Baez, yet another custodian it is raising for the first time and appearing to drop Jocelyn Robancho.  Labs indecisiveness simply fails to comply with its proportionality obligations.  And Labs has failed to advise this Court that it served subpoenas on four former School employees/faculty to search their personal devices, email, phone, and social media accounts.  So in fact, Labs' request for custodians is 18 (two overlap with individuals School has already agreed to collect.)

Despite Labs' protests, there is no misrepresentation of the statements made during the parties' meet and confer.   Labs statements in writing speak for themselves and is an accurate representation of its previous positions.  Nor is  Labs' ESI subject matter approach appropriate.  Putting aside the issue of relevance, Labs requests for employee and student complaints about *any* subject matter for example is so broad it could involve teams of individuals at School.  School advised Labs during meet and confer that such a broad request made it impossible to investigate.  To narrow the issues, on June 8, 2020, School proposed that the parties agree to a previous offer made by Labs to identify a single custodian for each category who would have the most relevant information on these subject areas and Labs refused stating it did not want to preclude others who may also have relevant information.

***Second,*** Labs request is not proportional to the needs of the case.  The sheer number of custodians and data locations make the request unreasonable.

Data Locations
School's custodians rely heavily on G-Suite and Slack, which is entirely based in the cloud and requires two-step authentication.  These technologies require a complex ESI collection, which is expensive, particularly now during COVID-19 where all collections will occur remotely.  This may require data collection by individual, which is equally time consuming and disruptive to the School's executive team.  And the types of data make it more likely to be time consuming.  In order for Slack for example, to be in a format that can be easily read, it should be collected by using third party software tools.  However, Slack (and Google) are constantly updating their platforms to be more secure in light of COVID-19, which means that these third party vendors have to update their collection software in order for it to be compatible.  If the third party software cannot be used remotely, this means each individual's data will need to be collected separately and then given to a vendor to convert in a two step process.  This makes the collection process more expensive and time consuming.  Moreover, Labs is currently requesting collection from 22 categories of data sources including (1) Slack; (2) Google Docs; (3) corporate intranet; (4); LinkedIn; (5) Reddit; (6) Facebook; (7) Hacker News; (8) Twitter; (9) personal email accounts of its founders; (10) personal social media accounts of its founders; (11) local desktops of its

MORRISON | FOERSTER

Magistrate Judge Thomas S. Hixson
June 12, 2020
Page Eight

custodians; (12) personal electronic devices of its founders including cellphones and iPads; (13) RingCentral voicemails; (14) student databases; (15) marketing databases; (16) all versions of the website; (17) all press releases; (18) financial databases; (19) GitHub; (20) Gmail; (21) direct messages from all social media accounts; and (22) emails from public facing email address: @admissions;@contact; @general; and @support.  Collection from these data sources for 16 custodians is not proportional.  While Labs argues School overstates the number of data sources, it does not disagree that it expects all these categories to be collected.

Number of Custodians.
Sixteen custodians is facially unreasonable.  For example, Paragraph 10 of the N.Cal. Model ESI Stipulation for Patent Cases contemplates *five* custodians.  In a recent trade secret case, Magistrate Judge DeMarchi shot down a request for 33 custodians, including apex custodians and limited it to 10 custodians under certain limitations and cost shifting.  *See Alta Devices, Inc. v. LG Electronics, Inc.,* 2017 WL 2687806; *see also Nevro Corp v. Boston Scientific Corporation*, No. 16-cv-06830-VC (MEJ), 2017 WL 2687806 at *3 (N.D. Cal. June 22, 2017), (holding 7 versus 13 ESI custodians was proportional in a patent case.)  Labs does not dispute this legal authority.  There is no justification for this case to have more than double the number of custodians in a patent case.

Labs Has Not Shown A Need Based on the Size, Complexity, and Issues In This Case
School has agreed to collect from Austen Allred (founder and CEO), Ben Nelson, (co-founder), Trevor McKendrick (Chief of Staff), Adam Grenier (former Vice President of Product and Marketing), and Lindsey Monroe (Director – Creative).  These custodians have been at the School since inception and would be the custodians with the most information relevant to the *Sleekcraft* factors, which the parties agree is the basis for most of the relevant discovery in this case.  *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979).  School chose its custodians based either on Labs previous requests or who it believed would most likely have relevant information based on the *Sleekcraft* factors.  In its May 15, 2020 email, in addition to those named custodians listed above, Labs requested additional custodians based on the following topics: (1) The primary individual(s) responsible for the drafting of student outcomes reports; (2) The primary individual(s) who manage the Lambda Labs project; (3) The primary individual(s) involved in the Red Lambda transaction and any continued use of the Red Lambda mark; (4) The primary individual(s) responsible for trademark filings; and(5) The primary individual(s) responsible for press releases and media coverage.  Setting aside the issue of student outcome reports, which will be addressed below, Labs has never asserted that these unnamed custodians on these topics would not be cumulative of the individuals that School has already agreed to collect.  And even if this were not the case, Labs has not explained why it would need more than one individual primarily responsible for each category.

MORRISON | FOERSTER

Magistrate Judge Thomas S. Hixson
June 12, 2020
Page Nine

Now Labs' request has ballooned to the following additional custodian subject matter: (1) career planning and student placement; (2) student outcome reports; (3) student complaints; and (4) employee complaints. Labs has yet to explain how any of these topics could be relevant to any claim or defense in this case. Labs has not asserted a trademark dilution or tarnishment claim. The only allegation that could be remotely related is its claim of loss of goodwill. But as will be discussed in a later joint letter brief, due June 26, 2020, this type of discovery is irrelevant to a loss of goodwill damages claim. Typical goodwill discovery would be in *Labs* possession or be publicly available. What is said internally at the School by its students or employees is by its very nature, irrelevant. Types of information that is relevant is Labs expenditures in building its reputation in order to estimate the harm, evidence of Labs' market share loss, or evidence that customers for its super computers like Microsoft and Apple got very angry with Labs because of problems caused by School's educational and payment model. Whether or not a School employee or student complains about School or its model, and the internal discussions about any complaints or data behind student placement has absolutely nothing to do with Labs' loss of goodwill damages claim. Labs does not dispute any of this. Taken to its logical conclusion, employees who complain about lack of toilet paper would be relevant to the calculation of alleged damage to Labs goodwill in its trademarks. Labs' position is not proportional for an additional reason. These custodians maintain sensitive and private information of its employees and students, which will require detailed attorney review before production. There is no justification for dragging student and employee data into a trademark dispute. For these reasons, Sabrina Baez, former head of Career Placement, Caleb Hicks, President and VP of Learning, or any additional custodians in these subject areas are unnecessary.

***Third,*** Labs is targeting the School's apex custodians who are entitled to the protection of the "apex" doctrine. *See Apple Inc. v. Samsung Electronics Co., Ltd*., 282 F.R.D. 259, 263-64 (N.D. Cal. 2012) (describing purpose of doctrine and its application with respect to depositions). School has already agreed to collect ESI from its CEO and co-founder, Chief of Staff, and several former members of its executive team. Labs' latest request to include Caleb Hicks, President and VP of Learning is cumulative of what custodian School has already agreed to collect or invades student and employee confidentiality, areas not relevant to this trademark dispute. Moreover, as explained to Labs already, Austen Allred would be the person most relevant to the School's trademark applications. The only other potential custodian would be the School's outside trademark counsel (which Labs has already served a subpoena) or general counsel. Neither warrant collection. As explained during meet and confer, since School has more employees than Labs, Labs' request for additional custodians on Lambda's executive team is not proportional. Lambda School therefore respectfully requests that the Court order that the five custodians School has already agreed to collect be sufficient and that two additional custodians may be added with good cause shown.

**MORRISON | FOERSTER**

Magistrate Judge Thomas S. Hixson
June 12, 2020
Page Ten

    Respectfully Submitted,

Morrison & Foerster LLP

By: */s/ Jennifer Lee Taylor*
Jennifer Lee Taylor
Nicholas Herrera
Robert S. Sandoval

Attorneys for Plaintiff,
LAMBDA LABS, INC.

Rimon, P.C.

By: */s/ Karineh Khachatourian*
Karineh Khachatourian
Nikolaus A. Woloszczuk

Attorneys for Defendant,
LAMBDA INC.

## **ATTESTATION**

    I, Jennifer Lee Taylor, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that Karineh Khachatourian concurred in the filing of this document.

                                            */s/ Jennifer Lee Taylor*
                                               Jennifer Lee Taylor