JENNIFER LEE TAYLOR (CA SBN 161368)
JTaylor@mofo.com
NICHOLAS HERRERA (CA SBN 301992)
NHerrera@mofo.com
ROBERT S. SANDOVAL (CA SBN 311032)
RSandoval@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
LAMBDA LABS, INC.

RIMON, P.C.
Karineh Khachatourian (SBN 202634)
karinehk@rimonlaw.com
Nikolaus A. Woloszczuk (SBN 286633)
nikolaus.woloszczuk@rimonlaw.com
2479 E. Bayshore Road, Suite 210
Palo Alto, California 94303
Telephone: 650.461.4433
Facsimile: 650.461.4433

Attorneys for Defendant,
LAMBDA INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| LAMBDA LABS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LAMBDA, INC.,<br><br>　　　　　Defendant. | Case No. 4:19-cv-04060-JST (TSH)<br><br>**JOINT LETTER BRIEF REGARDING THE PRESERVATION OF CERTAIN DATA SOURCES**<br><br>Judge:　Magistrate Judge Thomas S. Hixson |

Per the Court's Order (ECF No. 69), the Parties submit this joint letter brief concerning the preservation of certain data sources. The parties met and conferred by telephone in good faith to resolve their disputes prior to filing this letter.

| | |
|---|---|
| Morrison & Foerster LLP<br><br>By: */s/ Jennifer Lee Taylor*<br>Jennifer Lee Taylor<br>Nicholas Herrera<br>Robert S. Sandoval<br><br>Attorneys for Plaintiff,<br>LAMBDA LABS, INC. | Rimon, P.C.<br><br>By: */s/ Karineh Khachatourian*<br>Karineh Khachatourian<br>Nikolaus A. Woloszczuk<br><br>Attorneys for Defendant,<br>LAMBDA INC. |

**Lambda Labs' Position**

      Lambda School seeks to be excused from continuing to preserve certain categories of potentially relevant documents—based on its offer to preserve documents from one person per category.  Its offer is insufficient.  While the parties may later agree to limit *production* to one custodian for given categories, *preservation* must be broader and should include everyone who may possess relevant materials.[1]  Importantly, Lambda School has *not* identified any burden to preserving these materials—not in response to Lambda Labs' repeated questions during meet and confer, and not in this brief.  Indeed, it cannot because Lambda School has represented that its general policy is not to delete documents even apart from formal litigation holds.[2]

      Lambda School specifically objects to preserving documents in the following categories[3] based on relevance, but offers no authority—during the parties' meet and confer, or below—that a party may refuse to *preserve* materials simply because it might object to *producing* them later.  The Court should order Lambda School to preserve all potentially relevant documents in the following categories.[4]

1. <u>Voicemails</u>.  Lambda Labs thought this issue was *resolved* in meet and confer, and addresses it only because Lambda School raises it below.  For clarity, Lambda Labs has *not* asked Lambda School to preserve every voicemail in its system, but rather asked it to preserve documents of individuals who are likely to have relevant materials, with voicemails being one type of document.  Lambda School explained during meet and confer that it is *already preserving* those voicemails because its employees receive copies of voicemail messages as emails, which are being preserved.  Thus, there should be *no* dispute regarding voicemails and no reason to discuss preservation within its Ringcentral system.  However, Lambda School claimed for the first time this afternoon that the voicemails found in its email inboxes are not "reasonably accessible."  But any concerns it may have about accessibility, document review, and ESI storage costs is not pertinent

---

[1] Otherwise, the "safety net" of additional custodians that the Court advised the parties to include would be meaningless, because Lambda School will not be able to produce documents that are not preserved.

[2] Lambda School added vague complaints about the scope of *Lambda Labs'* preservation efforts to its portion of this brief just as it was being finalized for filing—far too late for Lambda Labs to address them.  To the extent Lambda School has genuine concerns regarding the scope of Lambda Labs' preservation efforts, Lambda School is willing to meet and confer about them.

[3] Despite weeks of meeting and conferring regarding document preservation and ESI issues, Lambda School shifted its position on numerous issues this afternoon.  But it did not explain what it was agreeing to do; instead, it deleted sections from the draft and stated that "there is no dispute" on certain issues.  Lambda Labs followed up to confirm the scope of what it believes to be the agreement.  For avoidance of doubt, Lambda Labs identifies those issues and the scope of what it believes Lambda School agreed to do in this brief to give Lambda School the opportunity to state any disagreements for the Court.

[4] Lambda Labs offers brief explanations on relevance to provide the Court with context, but does not believe relevance can excuse a party from preserving documents in the absence of burden.

to this brief, which merely addresses *preservation*. Such concerns are also not ripe because they were raised for this first time this afternoon and have not been addressed in meet and confer.[5]

2. <u>Student outcome reports</u>. Lambda School publishes occasional "student outcome reports" regarding its student graduation rates, employment prospects, and so on. These reports have generated significant controversy because press accounts earlier this year suggested Lambda School inflated or falsified its student employment data. This controversy bears directly on the harm Lambda School is causing to Lambda Labs' trademark goodwill. Lambda Labs is regularly confused with Lambda School, including online. Thus, negative press associated with Lambda School is likely to affect the goodwill in the "Lambda" name, which will reflect poorly on *both* Lambda School and Lambda Labs because they are confused. Lambda Labs asked Lambda School to preserve all documents related to its student outcome reports, including the underlying data and drafts. Lambda School objects that they are not relevant, but that objection does not excuse it from preserving documents.

3. <u>Complaints by Lambda School students and employees</u>. Lambda School has also been the subject of frequent complaints from students and employees regarding the quality of its services, which have led to negative press attention and further affect the goodwill in the "Lambda" name. Lambda School argues these documents are not relevant, and the parties will file a joint letter brief on this topic on June 26. Until then, Lambda School should preserve all materials related to such complaints.

4. <u>Trademark filings and discussions thereof</u>. Lambda School confirmed this afternoon that it will preserve all materials on this topic. (*See* ECF No. 62 at 10 n.4 (noting Lambda School's previous failure to respond).).

5. <u>Lambda School's "Lambda Labs" program</u>. Lambda School confirmed this afternoon that it will preserve all materials on this topic. (*Id.*)

6. <u>Lambda School's use of the "Red Lambda" marks</u>. Lambda School confirmed this afternoon that it will preserve all materials on this topic. (*Id.*)

7. <u>Lambda School's acquisition of the "Red Lambda" marks</u>. Lambda School confirmed this afternoon that it will preserve all materials on this topic. (*Id.*)

8. <u>Confirmation regarding other categories</u>. Lambda Labs requested preservation of documents related to (a) press and media coverage, (b) various business functions (product, marketing/promotions/public relations, and investments and funding), and (c) career planning and student placement. Lambda Labs believed Lambda School was preserving these documents, but received no response when it tried to confirm. Lambda

---

[5] *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 10817203 (N.D. Cal. Jan. 30, 2012), is inapposite because the parties *agreed* voicemail discovery was not necessary for the patent claims at issue. (*Id.* at 14.) In contrast, voicemails and phone recordings can be key evidence of confusion in trademark cases. In fact, Lambda Labs has received and will produce phone messages from confused Lambda School students who have contacted Lambda Labs thinking it was their school.

School states below for the *first* time that it will not preserve these documents beyond "what it has already done," which is an entirely unclear statement. It should be ordered to continue to preserve documents in these three subcategories.

In short, the Court should make clear that Lambda School is obligated to preserve all potentially relevant materials, not just some. Although this brief concerns only *future* preservation, Lambda School incorrectly claims Lambda Labs seeks to impose sanctions for past failures to preserve. It also tries to shift the burden to *Lambda Labs* to prove that the five individuals identified by Lambda School as custodians are **not** sufficient for purposes of preservation, in the same fashion it hid the ball during the meet and confer process on the appropriate number of custodians. Lambda School's position has no legal support and makes no sense: it is the *responding* party, not the requesting party, who must identify documents that need to be preserved because it has the information to do so. Finally, Lambda School's claim that it only recently learned that items like student complaints and negative press attention were relevant to this case is undercut by the Complaint in this case, which put it on notice as early as July 15, 2019. (ECF No. 1 ¶ 42 ("Lambda [Labs] may also be harmed by a mistaken association with Defendant due to controversy surrounding Defendant's business practices . . . .").)

**Lambda School's Position**

This preservation dispute arose out of the parties' attempts to finalize an ESI stipulation. Specifically, Paragraph 4(f) of the Model Order provides: "The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that: …. data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved. Further, the Model ESI Stipulation contemplates that voicemails are not reasonably accessible. Paragraph 4( e) "Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve…voicemail." Labs does not dispute this. Rather, it ignores that a discussion of preservation must include proportionality, reasonable accessibility and the factors enumerated pursuant to Federal Rule 26(b)(1) and 26(b)(2)(B). And the parties both have a shared responsibility to ensure proportionality. In light of the proportionality factors, School proposed that the issues of preservation be deferred until the Court ruled on the parties other ESI and discovery disputes, which would have bearing on this matter, but Labs refused. This trademark infringement case was filed on July 15, 2019, and amended pleadings were filed in March 2020 and April 2020. Although the parties agreed to negotiate an ESI Stipulation early on in the case, those negotiations did not begin until April 2020. School's problem with Labs' requests is that it seeks to impose a preservation obligation on School retroactively. To be clear, School recognizes the importance of preservation. School has been transparent with Labs. Given the breadth of Labs preservation requests, the vagueness of its goodwill allegations, and disputes over relevancy, School has asked for preservation parameters to avoid future disputes, which Labs has refused to provide. By requesting that School preserve broad sweeping categories of documents that stretch over multiple groups, rather than particular custodians or datasources, the burden falls more heavily on School since it is much larger than Labs. For example, just because you file a patent infringement suit over a widget, this does not mean you institute a legal hold over your entire engineering department. That is what Labs is asking School to do. Having a safety valve of custodians to be named later is not enough to justify broad

preservation requests.  School will continue to follow its practice of retaining ESI, however it wishes to avoid an ongoing preservation obligation for remote individuals and datasources to save on ESI and archiving costs, and avoid future disputes.  If as Labs says, it is up to the responding party to identify sources to preserve, then there should be no dispute here.  Labs says it has preserved everything School has requested, but (1) School did not request preservation of broad sweeping categories of documents that extend over multiple departments and (2) Labs has never disclosed what preservation efforts it has taken.  As of the filing of this letter, Labs still has not provided a list of its data sources or potential custodians.  The problem is that Labs will not confirm that instituting a legal hold of the individuals and datasources most likely to contain relevant information is enough.  While School did impose a legal hold on the datasources and individuals most relevant to the issues raised in the complaint in July 2019, and generally its practice is not to delete data, Labs now seeks preservation obligations on subject matter and individuals for discovery that spans over 50 requests it did not serve until May 2020, the majority of which is not mentioned in the pleadings. The parties spent at least 14 hours meeting and conferring on the ESI stipulation.  School met and conferred again on June 8, 2020.  And again today for another two hours.  Any issues raised herein were discussed with Labs at least once during the multiple meet and confer sessions.  School should not be faulted for trying to narrow dsiputes.  And during the course of these discussions, even today, Labs preservation demands continued to change.

      Labs claims that School's additional attempts to resolve or narrow these disputes is somehow wrong.  Having reviewed Labs' portion, issues were raised for the first time that School thought were resolved.  Even after agreement, Labs continues to complain.  There is no dispute that School is preserving data from the custodians and datasources most likely to contain information concerning Red Lambda, the Lambda Labs program, and documents concerning its trademark applications.  This was made clear to Labs during multiple calls and School is surprised Labs raises it here even after confirmation today.  The remaining disputes as School understands it is that Labs request for preservation of broad sweeping subject matter that falls on teams of individuals at School creates a disportionate preservation obligation.  School's entire IT infrastructure is cloud based and archiving limits are set by the vendor.  Some providers have additional archiving solutions if eligible, but they are expensive.  As a cloud based company, School does not independently back up its datasources.  To the extent retention is customizable, School's default setting is to retain, not delete.  Labs would not confirm that it does not expect School to back up its data outside of the cloud.  Local backups would be time consuming and expensive, requiring individual collection on a regular basis of multiple custodians and datasources.  Nor does Labs say how it is preserving its own data and that somehow what School has done is any different.  School does not want to be accused of spoliation down the road because it did not identify every single individual who may have received an email touching on the disputed subjects, no matter how remote or duplicative.

      <u>Voicemails:</u>  Labs requests that all voicemails at School concerning various broad subject matter be preserved regardless of custodian or datasource.  Retention of voicemail is time-consuming and costly to preserve, collect, review, and produce in litigation, supporting the argument that the information is not "reasonably accessible" under Federal Rule of Civil Procedure 26(b)(2)(B).  Given the number of proposed custodians (16) and datasources (22) that Labs is requesting, preserving voicemail of anyone who may have touched a subject matter no matter how remote, particularly when that subject matter has little to no relevance to the issues in the case is not proportional.  Given that voicemail may contain private and employment

information of its students, some international, this will require careful review. Moreover, there is no way to cull voicemail, so each would have to be reviewed independently. Finally, voicemail are MP3 files that are larger in datasize, which increase ESI and storage costs. Because of these difficulties, voicemail was even excluded in the Apple/Samsung patent wars where it was agreed to by attorneys at the same firm as Labs. *Apple Inc. v. Samsung Elecs. Co.,* No. 11-CV-01846-LHK, 2012 WL 10817203, at *14 (N.D. Cal. Jan. 30, 2012). If School needs to continue to preserve voicemail, it should be tied to a single custodian who has the bulk of the information for each of Labs topics beyond those custodians already identified.

Student outcome reports. School's student outcome reports are publicly available. Labs argues that intrusive discovery into the back up for School's student outcome reports should be preserved because it is relevant to Labs' harm to goodwill allegation. Labs' request is not proportional. What is said internally at the School by its students or employees is by its very nature, irrelevant to a loss of goodwill claim. Types of information that is relevant is Labs expenditures in building its reputation in order to estimate the harm, evidence of Labs' market share loss, or evidence that Labs' customer relationships were affected because of problems caused by School's educational and payment model. Second, School's student outcome reports are prepared by teams of individuals at School. Therefore, Labs' request is too broad, as it seeks to preserve data for any individual who has ever touched a student outcome report at the School. Third, any internal back up data involves the personal and private academic and employment information of School's students since inception, which will require careful review and redaction if produced. Given that the relevancy of this subject matter will be determined in a future letter brief to be filed on June 26, 2020, School's position is the request is premature and rulings be deferred. However, if the Court rules that this information continue to be preserved, it should be limited to a single custodian most likely to have the bulk of the relevant information on this topic.

Complaints by Lambda School students and employees. For the same reasons as student outcome reports, preserving "complaints" by School students and employees either should be deferred or denied. Labs' request is too broad, involves an unreasonable amount of different data sources and custodians, and asks for sensitive student and employee private information with very little to no relevance to this case. School should not have to preserve data that it may not have to produce in this case. In the alternative, School should only be required to preserve from a single custodian who would most likely have the bulk of the relevant information on this topic.

Additional confirmation regarding other categories. For the same reasons discussed above, School should not have to continue to preserve investor relations or career planning and placement data beyond what it has already done(imposing a legal hold on those custodians and datasources most likely to have relevant information). Teams of individuals at School work on investor relations and career planning and placement. The same holds true for press and media coverage (all publicly available, internal communications irrelevant or in the hands of third parties), and marketing/promotions (all publicly available, internal communications already preserved through identified custodians and datasources). School has identified its custodians, IT infrastructure, and efforts to preserve. Nothing more should be required. If the Court believes more is required, such burdens should be imposed on both parties, not just School.

## **ATTESTATION**

  I, Jennifer Lee Taylor, am the ECF user whose credentials were utilized in the electronic filing of this document.  In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that Karineh Khachatourian concurred in the filing of this document.

                 */s/ Jennifer Lee Taylor*
                   Jennifer Lee Taylor