RIMON, P.C.
Karineh Khachatourian (SBN 202634)
karinehk@rimonlaw.com
Nikolaus A. Woloszczuk (SBN 286633)
nikolaus.woloszczuk@rimonlaw.com
2479 E. Bayshore Road, Suite 210
Palo Alto, California 94303
Telephone: 650.461.4433
Facsimile: 650.461.4433

Attorneys for Defendant,
LAMBDA, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| LAMBDA LABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> LAMBDA, INC., <br><br> Defendant. | Case No. 4:19-cv-04060-JST (TSH) <br><br> **MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE [ECF 84]** <br><br> Judge:   Hon. Jon S. Tigar |

**NOTICE OF MOTION**

Pursuant to Local Rule 72-2, Fed. R. Civ. P. 72(a), and 28 U.S.C. § 636(b)(1)(A), Defendant Lambda Inc. ("Lambda School" or "School") hereby moves for relief from Magistrate Judge Thomas S. Hixson's Discovery Order dated July 17, 2020 (ECF 84) (the "Order") arising from two rounds of briefing (ECF Nos. 79 and 81). Lambda School respectfully objects to Magistrate Judge Hixson's Order in its entirety because it is based on an incorrect holding that a trademark plaintiff can obtain discovery to establish the irreparable harm element for a permanent injunction and to show loss of control over its goodwill with information to try to prove that the defendant *should* have a poor reputation, as opposed to obtaining discovery into what the defendant's public reputation *actually is*, and how it affected Lambda Labs, Inc. ("Labs") relationships with its customers. Lambda School objects to the Order because this holding is contrary to law ( ECF 84, 1:24-2:1). Any discovery ordered is based on this incorrect holding and therefore, should be reversed.

Dated:  July 31, 2020                                    Respectfully submitted,

                                                         RIMON, P.C.


                                                     By: /s/ Karineh Khachatourian
                                                         Karineh Khachatourian
                                                         Nikolaus A. Woloszczuk

                                                         Attorneys for Defendant,
                                                         LAMBDA, INC.

## I. INTRODUCTION

Lambda School respectfully seeks relief from Judge Hixson's July 17, 2020 Discovery Order because the holding that a trademark plaintiff is entitled to obtain discovery so that it can try to prove that a defendant *should* have a poor reputation to prove irreparable harm and loss to goodwill is contrary to law. This mistake of law was the basis for the Order compelling School to respond to over *forty* RFPs seeking discovery into internal aspects of School's business, rather than seeking appropriate discovery into what School's public reputation *actually is,* and whether it has harmed Labs' reputation amongst its relevant market. Labs' RFPs and the Order contemplate that if Labs proves infringement, that this Court will entertain briefing into the adequacy of School's goods and services – i.e., the student experience and career placement—all so that Labs can *create* its own irreparable harm. Under the Order's holding, *every* trademark case could devolve into an investigation of a Defendant's goods and services, regardless of the differences – *e.g.*, here Lambda Inc. is a school and Lambda Labs is a technology company that makes super computers. The impact of the Order to future trademark cases is significant. Although Judge Hixson acknowledged that School was "right, of course" that a student complaint in and of itself did not mean that School had a bad reputation, the Court allowed the discovery anyway even though the Court acknowledged that "the complaints Labs seeks are not actually conclusive as to the quality of education. It is doubtful that any student of any school went through their entire education and did not have a single complaint about something, but that does not mean they were dissatisfied with their education." And the discovery was ordered even after Labs conceded that it does not even have to prove that an infringer has a bad reputation. ("A plaintiff is not required to prove that an infringer has a poor reputation to obtain injunctive relief—only that the plaintiff is experiencing irreparable harm by losing control over its mark and reputation.") Given Judge Hixson's findings, and Labs' concessions, the ordered discovery is not relevant or proportional.

Lambda School's model increases access to education and School is rightly proud of the opportunities and services it provides its students. Between School's innovative approach and its high-profile as a Silicon Valley startup, it is no surprise that it has attracted media attention. But a few negative articles that Labs submitted to justify its discovery requests were thinly-sourced as

they only quote *three* former students with complaints—this cannot "open the door" to the discovery into a wide range of student and school internal affairs.  Unlike a consumer purchase of super computers, the school experience and career placement are both very personal and private.  The Order harms School by (1) interfering with its relationships with its students and companies who hire School's students; (2) invading the privacy of potentially thousands of former students; and (3) imposing high and unnecessary discovery costs on School.  This Court should vacate Judge Hixson's Order and remand with instructions to reconsider in view of the correct legal standard, which is that "reputational" discovery must be tied to a plaintiff's relevant market not what a defendant's reputation should be.

## II.     LEGAL STANDARD

A district court may modify or set aside a magistrate judge's non-dispositive order "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. 636(b)(1)(A); *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991).  The clearly erroneous standard applies to findings of fact, and the contrary to law standard is applied to legal conclusions.  *United States v. Doe*, 136 F.3d 631, 636 (9th Cir. 1998); *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999); Fed R. Civ. P. 58(g)(2)(D).

## III.    THE ORDER IS CONTRARY TO LAW BECAUSE IT IMPERMISSIBLY EXPANDS THE BOUNDARIES OF REPUTATIONAL EVIDENCE

Judge Hixson's Order is contrary to law because it is entirely based on a misapplication of the role and boundaries of reputational evidence.  Judge Hixson held that reputational evidence consists not only of what the public *actually* thinks of a trademark defendant, but that it is broad enough to permit discovery in pursuit of a trademark plaintiff's own efforts to prove that the defendant *should* have a poor reputation.  ECF 84 at 1:24-2:1 ("School reasons that reputation evidence consists of what people think of you, not what they *should* think of you if only they knew the truth.  However, the Court disagrees.") (emphasis in original).  This holding is contrary to common sense consideration of what "reputation" is, and there is no case law support for the Order's expansion that a plaintiff can use the discovery process to try to "dredge[] up" such evidence in discovery.  ECF 84 at 2:1-4.  Judge Hixson's entire Order  is based on his

misapplication of the law.

In order for a trademark owner to obtain a permanent injunction over an adjudged infringer, they must present evidence of irreparable injury. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir.2011). It is not enough that a likelihood of confusion, i.e., infringement has been found. *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). Rather something more is needed, such as "[e]vidence of loss of control over business reputation and damage to goodwill …." *Id.* As Labs' concedes, "A plaintiff is not required to prove that an infringer has a poor reputation to obtain injunctive relief—only that the plaintiff is experiencing irreparable harm by losing control over its mark and reputation". ECF No. 79 at fn. 8; *see also* McCarthy § 24:15 (while the "trademark owner need not prove [the] junior user's goods or services are inferior.")

Applying Ninth Circuit cases, district courts have held that this showing is made with evidence that the Plaintiff has been effected by the Defendant's bad reputation by evidence of customers refusing to do business with Plaintiff, loss of market share, corrective advertising, financial losses, or economic concessions, all information in Plaintiff's possession. *Blumenthal Distributing, Inc. v. Herman Miller, Inc.*, CV14-01926 JAK (SPx), 2017 WL 3271706 at *21 (C.D. Cal. Aug. 1, 2017); *BBC Group NV LLC v. Island Life Restaurant Group LLC*, No. C18-1011 RSM, 2020 WL 758070 at *6 (W.D. Wash. Feb. 14, 2020). And all cases Labs cited where a court granted an injunction, it was based on far less evidence and in the same line of goods. ECF 79 at 4 (citing *Brooklyn Brewery Corp. v. Black Ops Brewing, Inc.*, 156 F. Supp. 3d 1173, 1184-85 (E.D. Cal. 2016) (granting injunction based on suggestion that consumers were "unsatisfied" with the quality of defendant's beer in lawsuit involving beer makers); *IHOP Franchising, LLC v. Hameed*, 2015 WL 429547, at *5 (E.D. Cal. Feb. 2, 2015) (granting injunction based on external evidence of defendant restaurant's substandard health conditions for an illegal franchise IHOP); *Anhing Corp. v. Thuan Phong Co. Ltd.*, 2015 WL 4517846, at *23 (C.D. Cal. July 24, 2015) (granting injunction based on testimony from two individuals that defendant's rice noodles were lower quality than plaintiff's). None of these cases involve

3

discovery or evidence into what an infringer's reputation should be or the truth of public statements. Other cases cited by Labs also do not justify discovery into what a defendants' reputation should be. *OTR Wheel Eng'g, Inc*. stands for the proposition that damage to a trademark plaintiff's reputation can be considered in evaluating irreparable harm; *Sazerac* involves analysis of an exceptional trademark infringement case; *Kreation Juicery*, the parties were in the identical space and Plaintiff relied on evidence of customer diversion; *Verified Nutrition, LLC* is not even a trademark case. *See* ECF 81 fn. 3. Through two rounds of briefing, Labs was unable to cite *any* authority permitting a trademark plaintiff discovery into a defendant's internal affairs, based merely on the premise that the plaintiff *thought* the defendant *should* have a poor reputation. Labs also did not cite to any cases where a plaintiff established irreparable harm by proving a defendant should have a bad reputation. Nor did Judge Hixson cite to any supporting authority for his conclusion that a trademark plaintiff is entitled to discovery to try and prove what the public "*should* think of [a trademark defendant] if only they knew the truth." *See, e.g.*, ECF 84.

It is unsurprising that there is no case law favoring such discovery for trademark plaintiffs. Otherwise *every* trademark case would likely become a sideshow of the plaintiff's discovery into a defendant's internal affairs to try and dredge up evidence that it could use to prove that the defendant *should* have a poor reputation. Discovery would be limited only by the plaintiff's imagination. For example, a company *could* develop a poor reputation for any number of reasons, such as discriminatory hiring/promotion practices, harassment, anti-competitive actions, unequal pay, substandard working conditions, workplace injuries, or violating environmental regulations. A trademark plaintiff could cite Judge Hixson's Order to take discovery into any and all of these areas so that it could try to *prove* such problems existed and that the defendant *should* have a poor reputation. This cannot be the law as reputational discovery "fishing expeditions" would become commonplace and trademark plaintiffs could gain an unfair advantage with defendants faced with the possibility that if they defend themselves, they are subjected to discovery into the legitimacy of their business. This is the exact type of discovery conduct Rule 26 and its proportionality requirements were designed to protect against. At best, Labs discovery is overkill and at worst it is an intentional campaign to dig up the proverbial "dirty laundry." But establishing irreparable

4

harm in trademark cases or loss of goodwill does not justify Labs' RFPs.

### IV.     LABS' RFPS ARE IMPROPERLY TARGETED TO PROVE SCHOOL SHOULD HAVE A POOR REPUTATION

Labs' RFPs demonstrate their improper scope seeking documents to prove that Lambda School *should* have a poor reputation and that Judge Hixson's Order was contrary to law. *See, e.g.*, ECF 81-1. Because Labs' moved on over *forty* RFPs, School describes representative examples below, but the same problems exist for all of them.

**RFPs 55-60, 69:** These RFPs concern School's *internal* documents about the aforementioned news articles and an anonymous gripe account on Twitter. But whatever School might have said internally does not reflect on what School's reputation *is*. Without explanation, Judge Hixson simply asserted that "[c]ommunications about the negative press articles may shed light on the extent of reputational injury…." ECF 84 at 2:12-13.

**RFPs 61-62, 68, 74, 77-80, 81-100:** Broadly speaking, these RFPs are related to Labs' professed desire to prove that School has made misrepresentations about graduation and employment rates. ECF 84 at 4:1-2. These RFPs indicate that Labs contemplates *re-doing* all of School's student outcome reports so that it can try and prove that School made misrepresentations and *should* have a poor reputation. Further highlighting the problem is that many of Labs' RFPs are based on nothing more than Labs' conspiracy theories that certain students were hired through a "sweetheart deal" (ECF 79 at 3 re RFP 74), or that School ceased utilizing an outcome-reporting agency because it was unhappy with the agency's reports (ECF 81 at 4 re RFPs 78-80). Whatever information on these subjects is already in the public record, to which Labs may rely on, it does not need to then investigate whether these public statements are true.

### V.      CONCLUSION

Judge Hixson's Order must be reversed because the entire order was based on a misapplication of the law relating to scope of reputational discovery. At minimum, this Court should remand with instructions to reconsider in view of the correct standard: that any reputational discovery be tied to School's actual reputation in the relevant market rather than prove up of what School's public reputation should be generally.

Dated: July 31, 2020

Respectfully submitted,

RIMON, P.C.

By: /s/ *Karineh Khachatourian*
Karineh Khachatourian
Nikolaus A. Woloszczuk

Attorneys for Defendant,
LAMBDA, INC.