UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMBDA LABS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>LAMBDA, INC.,<br><br>    Defendant. | Case No. 19-cv-04060-JST   (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 101 |

Lambda School has retained Dr. Lynne Weber of Duff & Phelps as an expert in this matter. Dr. Weber's cv states that she has 35+ years of consulting experience with expertise in market analysis, market research, statistics, data analytics, econometrics, forecasting, and risk assessment. School has hired her as a trademark expert, and it gave notice under paragraph 7.4(a) of the Protective Order of its intent to disclose Lambda Labs' AEO materials to her. Labs has objected under paragraph 7.4(b), and it now "bear[s] the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert." ¶ 7.4(c).

Labs hints at, but does not actually make, the traditional risk of harm argument that the expert is somehow connected to a competitor in a narrowly defined field. Labs is an AI infrastructure company, and Dr. Weber has in the past had consulting engagements with software companies in the AI/machine learning/data analytics space, although she has not had any such engagements in the last five years. ECF No. 101-2 at 3, 6. The lack of any ongoing relationship with a direct competitor in the AI space forecloses a finding of risk of harm on that basis. *See, e.g., Advanced Micro Devices, Inc. v. LG Electronics, Inc.*, 2017 WL 3021018, *3 (N.D. Cal. July 17, 2017) (rejecting a similar challenge where "neither [proposed expert] works directly for an

1  Imagination competitor, and Imagination has provided no concrete evidence that either one
2  engages in or assists with competitive decision-making at an Imagination competitor"); *Verigy US,*
3  *Inc. v. Mayder*, 2008 WL 4183493, *1 (N.D. Cal. Sept. 8, 2008) (within the narrowly defined
4  industry of Automated Test Equipment, a showing of an ongoing relationship with a competitor is
5  necessary to show a risk of harm).

6  Instead, Labs contends the risk of harm comes from the fact that "Dr. Weber provides
7  business consulting services in an industry Lambda Labs serves, has had clients in the same
8  industry, and may have future engagements in the industry . . ." ECF No. 101 at 2.  To make that
9  statement true, Labs has to go big and say that the industry is "technology companies."  *Id.* at 2, 3.
10 Labs goes on to explain that it is not concerned that Dr. Weber would intentionally violate the
11 Protective Order.  Rather, its concern is that if she gets to see Labs' AEO business strategy and
12 planning documents, financial records, pricing and supply chain information, and so on, that will
13 become part of her knowledge base, which will remain in her mind in any future consulting
14 engagements she might have in the technology industry.

15 But the technology industry is huge and includes countless products and services dissimilar
16 to Labs'.  This broad gesture at an entire sector of the GDP is too generic to establish a risk of
17 harm that the strictures of the Protective Order are inadequate to guard against.  The Protective
18 Order does have means for its enforcement.  *See* ECF No. 101-1 at 3 (in agreeing to comply with
19 the Protective Order, Dr. Weber agreed that "I understand and acknowledge that failure to so
20 comply could expose me to sanctions and punishment in the nature of contempt").  And if Dr.
21 Weber's work in the enormous technology industry should ever sharpen into an engagement with
22 an actual competitor of Labs', the Protective Order addresses that scenario too.  *See* Protective
23 Order, ¶ 7.4(c) ("If during the pendency of this matter, the Expert becomes employed or engaged
24 by a competitor to the Parties to this action, the Party retaining such Expert will promptly notify
25 Outside Counsel for the Producing Party of such employment or engagement.  The Expert will
26 cease reviewing any Protected Material until all Parties in the action have been advised and either
27 all Parties consent to the Expert continuing to have access to any Protected Material in this matter
28 or as otherwise ordered by the Court.).  The fact that Dr. Weber and Labs have clients in the same

very broadly defined industry does not show that these provisions are inadequate.

Further, an objection that would apply to nearly any expert is also too generic to show a risk of harm.  *See Advanced Micro Devices*, 2017 WL 3021018 at *3 ("The Court finds it unlikely that AMD would be able to select an expert in this space who does not consult, publish, teach, or invent in the relevant field.").  Probably every expert worth hiring in the Bay Area has clients in the technology industry.

Labs instead focuses on School's "need" to show particular documents to Dr. Weber.  Labs wants to know more about her intended role in the lawsuit, or what documents or categories of documents School wants to disclose to her, so it can determine if it has business concerns over the disclosure of those documents.  School refuses to say, contending this information is privileged.

In a different case, where a significant risk of potential harm had been shown, the disclosures Labs seeks could be productive and appropriate.  They're not required by the Protective Order, of course, and they are indeed invasive of attorney work product, but if there were a real problem that needed to be dealt with, disclosures like that could help.  But here, Labs' showing of risk of harm is insubstantial.  As a matter of common sense, a trademark expert will need to see at least some of the things Labs has designated as AEO.  *See id*. n.1.  There is no basis for giving Labs a sneak preview into Dr. Weber's expert report by requiring School to explain in more detail the exact contours of her engagement or the categories of documents it intends to show her.  The Protective Order does not contemplate disclosures like that, and Labs has not made a persuasive case that they're necessary.

Accordingly, Labs' objection to School's disclosure of Labs' AEO materials to Dr. Weber is overruled.

**IT IS SO ORDERED.**

Dated: December 16, 2020

THOMAS S. HIXSON
United States Magistrate Judge

3