UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMBDA LABS, INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>LAMBDA, INC.,<br><br>          Defendant. | Case No.  19-cv-04060-JST   (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 134 |

We are here for two matters: first, a joint discovery letter brief in which Lambda School moves to compel Lambda Labs to respond further to its interrogatories ("rogs") 1, 2, 4, 6 and 7, ECF No. 134; and second, School's motion for a protective order concerning depositions, ECF No. 140. The Court held a hearing this morning, and now issues this order.

**A.     Interrogatories**

   **1.     Rog 1**

School's rog 1 as Labs to: "Describe in detail each of the Labs Goods and Services Offered under each of the Labs Marks by You at any time—past, present, or expected in the future—by stating the name of each good or service and the Labs Marks under which it was Offered, stating the nature and description of the good or service, stating all applicable or available configurations of the good or service, stating all charged or Offered price(s), stating the marketing channels used for that good or service, Identifying the target customers for the good or service, Identifying the actual customers for the good or service, stating the first and last Date each good or service was Offered, stating Your plans to continue Offering the good or service, and Identifying Your employees who are knowledgeable about each good or service."

At first blush this seems like it's asking for a ton of information. But when you break it

1  down, it's really not that bad.  The answer could be in a chart format, which doesn't look pretty in
2  Word but could easily be populated in Excel:

| Name | Marks | Nature | Configs | Prices | Channels | Targets | Actuals | Dates | Plans | People |
|------|-------|--------|---------|--------|----------|---------|---------|-------|-------|--------|
|      |       |        |         |        |          |         |         |       |       |        |
|      |       |        |         |        |          |         |         |       |       |        |
|      |       |        |         |        |          |         |         |       |       |        |
|      |       |        |         |        |          |         |         |       |       |        |

9   Some of this information would have to be stated generally.  For example, for the technical
10  hardware and software products and consulting services at issue here, it's not feasible to list all
11  possible configurations, so Labs could just list the major variables.  For prices, probably just a
12  range or general metrics would be sufficient for each product or service.  Channels of trade would
13  be general things like trade shows or partners.  Targets are presumably types of customers.  And
14  the list of knowledgeable people would be just one or more examples.

15   But the important part of the rog response is the clear identification of what products or
16  services Labs offers, which marks they are associated with, the dates of those offerings, and then
17  the ability to connect those facts with the more general information discussed in the preceding
18  paragraph, which gives a sense of what the product or service is and who it's aimed at.

19   Labs' third supplemental response is unsatisfactory.  Labs says it "has offered and
20  continues to offer a variety of products and services related to artificial intelligence and machine
21  learning," but we never get a complete list of what they are.  Every list of the products and
22  services begins with the word "including" or "include."  The same is true of trade channels.  The
23  list of targets ("any customers for whom they are appropriate") is completely evasive, and is then
24  followed by the "including" problem.  And the trade channels and products are not broken down
25  by product or service.  If the answer is that Labs uses the same trade channels and eyes the same
26  targets for every single one of its products and services, it is free to say that, but it can't just leave
27  the reader guessing.  The first paragraph of Labs' answer identifies several customers, but doesn't
28  link them to any particular product or service.  All of Labs' references to customers suffer from

2

the "including" problem. Labs does not provide sufficient pricing information. While providing pricing information for every possible configuration of its goods or services may be unduly burdensome, Labs can certainly provide pricing ranges for them. Labs also fails to provide any information in response to this rog concerning its planned training, educational and research services, including their expected timing. Whether or not that information may also be responsive to rog 12, it is responsive to rog 1, which asks about goods and services "expected in the future." It is no response for Labs to say that School can ask witnesses for any information that is not in a rog response because School is entitled to seek information using the discovery tools of its choice.

Labs also never tells us what work its common law trademark rights are doing. Recall that the amended complaint at ECF No. 47 identifies three Lambda marks: the '853 word mark for computer software and hardware, the '852 design mark for computer software and hardware, and common law rights in the marks. ECF No. 47 at ¶¶ 11, 12, 15. Labs' response to rog 1 states that it uses the '852 and '853 marks for all of its products and services, including consulting. But we never hear about what the common law rights apply to, which may be significant given that the '852 and '853 marks are for computer software and hardware.

Accordingly, the Court orders Labs to amend its response to rog 1 to provide a complete answer, subject to the guidance provided above about how certain items likely need to be stated generally. Because we are nearing the close of fact discovery, the Court orders Labs to serve an amended response within seven days so that School can move to compel again if the amended response is still insufficient.

### 2. Rogs 2, 4, 6 and 7

The Court agrees with Labs that the dispute as to these rogs is unripe. The Court orders the parties to meet and confer further and for Labs to serve any amended responses by February 19, 2021, a deadline that Labs said it could meet at the hearing.

## B. Protective Order

School seeks a protective order barring Labs from asking certain types of questions during depositions. One form of relief that School seems to be asking for is that it wants to take the limits on document discovery concerning student and employee complaints that Labs agreed to or the

3

1  Court ordered and impose those same limits on deposition questions. However, that is illogical.
2  When the Court determines what is proportional for document production, the Court considers the
3  primary burdens associated with document discovery, which relate to what has to be searched for
4  and where. By contrast, the particular questions a witness is asked during a deposition do not
5  generally make the deposition more or less burdensome. If Labs asks a witness about any
6  complaints ever made about School, the witness can testify about what he or she knows. There is
7  nothing burdensome about that.

8  School is correct that a 30(b)(6) deponent is obligated to know certain things. But the only
9  specific 30(b)(6) topics that School objects to in the letter brief (topics 37 and 38) are not
10 burdensome. School complains that Labs' questions of the 30(b)(6) deponent exceeded the scope
11 of topics 31 and 44-46. But so what? The questioning attorney is permitted to do that, and if the
12 questions were outside the scope of the noticed topics, the deponent had no obligation to know the
13 answers. More generally, the Court does not believe that 30(b)(6) deposition topics that reference
14 repeated events (e.g., topic 31 "Your efforts to address or respond to complaints concerning the
15 quality of Your good[s] and services, curriculum, and instructors; student employment and career
16 placement; and income sharing agreements") require the deponent to have memorized every
17 instance, when that is likely impossible.

18 In the last paragraph of the discovery letter brief, School states that it "seeks a protective
19 order that permits School to refuse to answer deposition questions regarding (1) complaints about
20 School that do not fall within the aforementioned categories (which the ambiguous subject matter
21 of 'culture' is not within nor are complaints about School's administration of its internal Slack
22 channel ); (2) complaints made by employees; (3) non-student litigations or threatened litigations
23 against School; and (4) the terms of any agreements to cancel student income share agreements
24 and how School decides to cancel student income agreements." As to category 1, the Court
25 surmises that the "aforementioned categories" of complaints mean the limits that apply to
26 document discovery. In any event, the Court denies the motion for a protective order in its
27 entirety. All four areas of inquiry are relevant to reputational injury, which is relevant in this
28 trademark case in which Labs alleges customer confusion due to School's infringement. As for

4

1    student or employee privacy concerns, the protective order in this case, ECF No. 56, is sufficient
2    protection.
3    **IT IS SO ORDERED.**

5    Dated: February 17, 2021

_____
THOMAS S. HIXSON
United States Magistrate Judge