UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMBDA LABS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>LAMBDA, INC.,<br><br>    Defendant. | Case No. 19-cv-04060-JST   (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 191, 193, 195, 200, 204, 206, 208, 212, 216, 223 |

The deadline to move to compel concerning fact discovery turned into a crash landing in this case. The close of fact discovery was February 26, 2021, so under Civil Local Rule 37-3, the last day to move to compel was March 5, 2021. Under the Court's Discovery Standing Order, the parties are supposed to raise discovery disputes in joint discovery letter briefs. But on March 5, Lambda Labs filed two unilateral discovery letter briefs (and related motions to seal) concerning Lambda School's financial information and its Studios and Fellows programs. ECF Nos. 185-89. The Clerk's Office rejected them all, and Labs refiled them on Monday, March 8. ECF Nos. 190-93. In ECF No. 195, School argued that the dispute over the Studios and Fellows programs was moot, as it had produced all the documents sought in the motion to compel.

In ECF No. 199 the Court ordered the parties to file a joint discovery letter brief stating whether the discovery dispute concerning the Studios and Fellows programs was moot, and if not, what aspects of that dispute remain live. The Court also ordered School to file its response to Labs' letter brief concerning School's finances. School responded concerning its finances in ECF No. 200, arguing that this dispute was also moot. In ECF No. 202, the Court ordered the parties to file a joint discovery letter brief by March 22, stating either that the discovery dispute about School's finances was moot or identifying the aspects of the dispute that were not moot.

Despite the Court's order at ECF No. 199, Labs filed a unilateral discovery brief on March 15, stating its views on the aspects of the dispute over the Studios and Fellows programs that were not moot. ECF No. 204. School responded in ECF No. 206. The Court's order for a joint letter brief in ECF No. 202 concerning School's finances also did not work out as planned. Labs filed a unilateral response at ECF No. 212, and School responded in ECF No. 216. Labs filed its Court-ordered response at ECF No. 223.

In the meantime, a dispute has arisen (ECF No. 208) concerning a deposition that took place after the close of fact discovery, where the parties stipulated and the Court ordered that any disputes about it could be raised seven days after the deposition. ECF No. 177.

The Court held a hearing on March 29, 2021, and now rules on all outstanding fact discovery disputes.

**A.      Lambda Studios and Fellows Programs**

Procedurally, the Court is enforcing two rules here. One is the deadline to move to compel. Any fact discovery disputes that were not raised with the Court by March 5 are waived. (For purposes of this rule, the Court treats the March 8 letter briefs as timely because they are merely refiled versions of the filings that the Clerk's Office struck because they were filed as the wrong ECF event.) Second, in ECF No. 199 the Court ordered Labs to identify what aspects of this dispute were not moot. The Court did this in part because it is clear that there was insufficient meet and confer before the March 8 letter brief was filed. Accordingly, the Court will consider only (1) Labs' arguments in its March 15 letter brief that (2) were also in its March 8 letter brief. If condition #2 isn't satisfied, the dispute is untimely, and if condition #1 isn't satisfied, Labs failed to identify the issue as not being moot.

Labs' March 15 letter brief raises 11 issues:

<u>Lambda Studios</u>

1. Analysis of Lambda Studios (RFP 167). Labs says that Joshua Howland, the Director of Lambda Studios, testified about strategic evaluations School conducted of the program. Labs argues that "[r]ather than enlist Mr. Howland to locate the documents, Lambda School claims to have run 'terms on the agreed upon custodians (and additional custodians) and searched

2

centralized document repositories most likely to have this information.' (Ex. 3 at 2.) It then points to a single produced document which does *not* reflect the analyses about which Mr. Howland testified. (*Id*.) The Court should compel Lambda School to work with Mr. Howland to locate the documents about which he testified." (emphasis original). This issue was not raised in the March 8 letter and is time barred. With respect to RFP 167, the March 8 letter moved to compel certain categories of responsive documents, but the letter did not raise a dispute about what custodians' documents or central repositories should be searched. *What* to look for and *where* to look for it are different disputes. Litigants normally identify custodial and non-custodial sources relatively early in discovery to put some limits on discovery burden. With respect to custodians, the parties did that in this case. Once those boundaries have been worked out, a request for documents concerning a particular subject is understood to be a request to look in the agreed-upon places for it. Particularly at the end of fact discovery, a request to look in new custodial and non-custodial places for relevant documents is a different ask than a request for the relevant documents. This new request is untimely.

In addition to being time barred, the new request doesn't seem to seek documents responsive to RFP 167, which asked for "[a]ll documents located in central repositories or the files of the agreed-upon document custodians concerning Lambda Studios." The new request is for documents in a narrow subject wherever they might be, whereas the RFP asked for documents about a broad subject but only in certain places.

2. Project requirements (RFP 167). This is essentially a repeat of issue #1. The March 15 letter is a new request that School be ordered "to work with Mr. Howland and his team, including Lambda School employee Parth Shah, to locate" specifications documents. This is a request to change *where* School looks for documents in response to RFP 167, which was not raised in the March 8 letter. As before, this new request for a narrow type of documents wherever they may be does not line up with RFP 167's broad request for documents that are only in certain places.

3. Communications with Lambda Studios clients and potential clients (RFP 167). This is a repeat of issues 1 and 2, above.

4. Documents regarding the potential "deep machine learning" client (RFP 167). This is a

3

repeat of issues 1 and 2, above.

5. Lambda Studios advertisements on Bookface (RFP 167). This is a repeat of issues 1 and 2, above. Also, it is not true that in ECF No. 71 School agreed to produce documents from all of Austen Allred's personal social media accounts. *See* ECF No. 71 at 2 ("Labs has not provided any reason all social media accounts, local desktops, and a corporate intranet needs to be collected in addition to Google Docs and Slack. Initially, Labs defined social media as Facebook, Twitter, and Linkedin. It later ballooned to all social media accounts in existence. Labs offers no explanation why social media accounts should not be limited to its original proposal of Facebook, Twitter, and Linkedin. The fact that Austen Allred may post on other social media channels about School does not mean that its proposal to request all social media accounts is proportional.").

6. Presentations to Lambda Studios executive team (RFPs 167, 223). This issue is not new; it was fairly raised in the March 8 letter brief. What is new is School's claim that one of the presentations is privileged. The Court orders School to produce a privilege log concerning this document within two days. The Court orders the parties to file a joint discovery letter brief by April 5, 2021 either stating that the dispute over privilege has been resolved or setting forth their respective arguments concerning privilege.

7. Revenues and costs (RFPs 178, 184). Labs' March 8 letter requested documents responsive to these RFPs. Labs' March 15 letter changes the request into one for an order "to seek these materials directly from Mr. Howland or from other Lambda School employees who are likely to possess them." As discussed above, asking for new or different custodians is different from moving to compel responsive documents. This is a time-barred new request.

8. Agreements, SOWs and Invoices (RFPs 167-68, 178). This is not a new request. School says it has produced these items from its central repositories, and at the hearing Labs stated this was satisfactory.

Lambda Fellows

9. Project requirements (RFP 165). The March 8 letter sought contracts and statements of work for the Lambda Fellows program. The letter expressed the belief that the SOWs contain descriptions of services to be performed under each contract. The March 15 letter seeks

4

"documents describing any of the services provided and projects completed under the Lambda Fellows program," now untethered from contracts and SOWs. The March 15 letter is also a new request to search different sources: "The Court should compel Lambda School to search all available sources, including email communications, notes from phone calls with third parties, or other locations, where this information is likely to be found." For both reasons, this is an untimely new request. Regardless, School says no such documents exist, as the Fellows program is an internship placement program, and Labs provides no reason to think otherwise.

10. Revenues and costs (RFPs 178, 184). This is not a new request. School states it has produced responsive documents that it was able to locate after a reasonable search, and at the hearing Labs stated this was satisfactory.

11. Invoices (RFPs 165, 178). This is not a new request. School states it has produced responsive documents that it was able to locate after a reasonable search, and at the hearing Labs stated this was satisfactory.

Accordingly, Labs' motion to compel is granted in part and denied in part as stated above.

## B.   School's Financial Statements, Revenues and Costs

The Court is going to enforce the same two rules in the same way. The Court will look to Labs' unilateral letter brief at ECF No. 191 to see what disputes Labs raised by the deadline to do so. In ECF No. 202, the Court ordered the parties to meet and confer and advise the Court what aspects of the dispute about School's finances are no longer moot. In light of the parties' subsequent filings, in ECF No. 220 the Court again ordered Labs to clarify what disputes remained, which Labs did in ECF No. 223. Therefore, the Court will consider only those disputes mentioned in Labs' brief at ECF No. 223 that were raised in ECF No. 191 – and they all were.

RFPs 173, 176-179. This dispute evaporated at the hearing. The Court orders School to supplement its production of financial information responsive to these RFPs with 2021 Q1 information when it becomes available, and School agreed to do so.

RFP 182. This RFP asked for "Documents sufficient to show financial analyses and accounting for Your Income Share or Sharing Agreements, including analysis of total actual and expected revenue." The dispute is whether School must produce the mathematical models it uses

5

to evaluate expected Income Share Agreement payments on a per-student basis. The Court agrees with Labs that these models are responsive to this RFP because they are necessary to show the "financial analyses" concerning those agreements. The numbers themselves show the "accounting" but not the analysis. The Court also agrees with Labs that the models are necessary to show and understand the cost information related to the ISAs and to show how likely projected revenue is to materialize, which are relevant to a determination of School's profits. The Court understands that these models are commercially sensitive, but there is a protective order in place to deal with commercially sensitive documents. Accordingly, the Court orders School to produce these mathematical models.

RFP 64: "All contracts or written agreements between Lambda School and investors relating to income sharing agreements." RFP 172: "Documents sufficient to identify Your process for bundling and selling income share agreements to investors." RFP 188: "Documents sufficient to show all loans or indebtedness incurred by You that has been secured by Income Sharing Agreements, including analysis of total actual and expected revenue."

These RFPs seek information concerning School's primary source of revenue, its Income Sharing Agreements ("ICAs"). In brief, most of School's students enter into an ICA instead of paying tuition. After they graduate, if they get a job in the right field and make a salary of a certain amount, they pay a certain percentage of their income until they hit a specified cap. School bundles the ICAs and sells the right to receive that income as a financial product. The product is complicated, but at a high level, the investors pay School an upfront amount at the time the deal closes, which functions like a loan in that it must be repaid with interest. As money comes in from the students, it goes first to the investors, and then later is split between School and the investors. RFP 64 seeks the contracts or written agreements between School and the investors, so that Labs can figure out the flow of funds, i.e., the total ICA revenue, what must be subtracted from that as a cost (meaning it goes to the investors), and then what is left for School as profit. RFP 172 asks for documents that describe the bundling and sale process, so that Labs can understand how this financial product is created. RFP 188 is a little hard to understand, but seems to be targeted at the upfront payments that must be repaid, but in any event, Labs expects that the contracts sought by

RFP 64 would contain the information sought by RFP 188.

Because income from the ICAs constitutes such a large percentage of School's revenue, these documents are necessary for Labs to be able to figure out how much profit School makes, which is relevant to Labs' claim for the disgorgement of profits. The Court does not believe that traditional balance sheet and accounting documents are sufficient to calculate School's profit because complex financing arrangements like this can be obscured in traditional balance sheets. The Court understands the commercial sensitivity of this information, but the protective order in this case is adequate to deal with that concern. Further, School's willing to produce revenue information generated from financing ISAs, but unwillingness to produce the requested information that would let Labs understand the repayment obligations and split of future income, tends to underscore that the high level information School has provided to date does not paint a complete picture. Accordingly, the Court orders School to produce documents responsive to RFPs 64, 172 and 188.

In sum, Labs' motion to compel is granted in part and denied in part as described above.

## C.     School's Motion to Compel re:  30(b)(6) Deposition

The parties stipulated that School could depose Mitesh Agrawal, Labs' COO and Head of Business Development, in his personal and Rule 30(b)(6) capacity during the week of March 8, 2021 and that the deadline to move to compel resolution "of any disputes arising from Mr. Agrawal's deposition is extended to 7 days after his deposition is concluded." ECF No. 177. The parties agree that deposition was concluded on March 11,[1] and School timely moved to compel seven days later. ECF Nos. 208.

The motion is strange. School argues that Agrawal was unprepared as a 30(b)(6) witness. Nonetheless, School says it will forego another 30(b)(6) deposition on the noticed topics if Labs produces three types of documents: (1) a company valuation prepared in September 2018 by Carta Valuations, (2) NPS Survey results from after December 2020, and (3) documents prepared for and provided at any meetings that discussed NPS scores and customer satisfaction survey

---

[1] The transcript shows a March 10, 2021 date on the cover, but according to the videographer, it was March 11 in India Standard Time.

results, and any available underlying data. On the third point, School says it will be satisfied by a confirmation by Labs that it has produced all such documents that it has.

Labs responds by calling this motion a Trojan horse, saying that School is trying to take advantage of a later deadline to move to compel regarding a deposition to shoehorn in time-barred requests for document discovery. Nonetheless, Labs agrees to produce items 1 and 2 that School requests. As to the third, Labs does not agree, saying it is unduly burdensome to re-start the custodial document collection process with new search terms especially because document discovery is supposed to be over.

Let's think about where this leaves us. In the motion, School tried to bargain with Labs, offering to drop a motion to compel that it was bringing (concerning a deposition) in exchange for something else. Labs said no, so the parties did not reach a deal. Although School tries to imply otherwise, the Court does not think School's March 18 motion can timely seek to compel any of the three types of documents because those disputes did not arise out of Agrawal's deposition. School learned about the Carta Valuations document because it was referred to in another document that Labs produced (specifically, exhibit E to the letter brief). The only thing Agrawal had to say about the Carta Valuations document is that he did not know if Labs had it. As to the NPS surveys, Agrawal testified that Labs conducted them after June 2020, but School already knew that because Labs had produced the surveys through December 2020. As to the third category – documents that discuss NPS scores and customer satisfaction survey results – Agrawal for the most part testified he did not know what Labs had. School gained no new information about these three types of documents at Agrawal's deposition; accordingly, School's desire for those documents does not arise out of that deposition.

So, we need to go back to School's motion to compel another Rule 30(b)(6) deposition. The Court has reviewed the deposition excerpts School provided, and School has not demonstrated that Agrawal was unprepared on topics 24, 26-29. School has demonstrated that Agrawal was unprepared to testify about customer survey responses, but the Court agrees with Labs that this subject was not embraced in topic 29. The topic was: "Your knowledge of any survey results or any assessment, score, or ratings that are positive or negative made by Nvidia or

8

any other Labs' hardware or software supplier, manufacturer or partner regarding the quality of Labs Goods And Services, customer service, technical support, and/or how Labs is perceived by its Customers and/or its suppliers or partners." The most natural way to read that topic is that the "made by" clause modifies everything that precedes it, such that it is asking about survey results only if they were made by a Labs supplier, manufacturer or partner. And the word "regarding" seems to introduce the four subject matters the survey results could be about. In some way School is trying to lift the words "survey results" from the beginning of the topic and transpose them onto "how Labs is perceived by its Customers" at the end of the topic, but it just doesn't work.

School's motion to compel is denied.

**IT IS SO ORDERED.**

Dated: March 29, 2021

                                                                          _____
                                                                          THOMAS S. HIXSON
                                                                          United States Magistrate Judge