| | |
|---|---|
| RIMON, P.C.<br>Karineh Khachatourian (SBN 202634)<br>karinehk@rimonlaw.com<br>Nikolaus A. Woloszczuk (SBN 286633)<br>nikolaus.woloszczuk@rimonlaw.com<br>Oren J. Torten (SBN 332720)<br>oren.torten@rimonlaw.com<br>2445 Faber Place, Suite 250<br>Palo Alto, California 94303<br>Telephone: 650.461.4433<br>Facsimile: 650.461.4433<br><br>Attorneys for Defendant,<br>LAMBDA INC. | JENNIFER LEE TAYLOR (CA SBN 161368)<br>JTaylor@mofo.com<br>JOYCE LIOU (CA SBN 277720)<br>JLiou@mofo.com<br>NICHOLAS HERRERA (CA SBN 301992)<br>NHerrera@mofo.com<br>RYAN ROMAIN (CA SBN 319603)<br>RRomain@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California  94105-2482<br>Telephone: 415.268.7000<br>Facsimile: 415.268.7522<br><br>Attorneys for Plaintiff,<br>LAMBDA LABS, INC |

March 18, 2021

| | |
|---|---|
| LAMBDA LABS, INC.<br><br>       Plaintiff,<br><br>  v.<br><br>LAMBDA, INC.,<br><br>       Defendant. | Case No. 19-cv-04060-JST (TSH)<br><br>**DISCOVERY LETTER REGARDING RULE 30(b)(6) DEPOSITION OF LABS AND PRODUCTION OF DOCUMENTS**<br><br>**[Previously Filed Under Seal as ECF 207-4--Re-filed with Redactions Pursuant to Court Order, ECF 231]** |

**LAMBDA SCHOOL'S POSITION**

Not only is Labs unwilling to meet and confer on discovery issues that it raises, but it is also unwilling to meet and confer on issues that School raises. On February 24, School attempted to depose Mitesh Agrawal, the COO and Head of Business Development at Lambda Labs, in his personal and Rule 30(b)(6) capacity. Due to a last minute flight change, impermissible speaking objections, and general delays caused by Mr. Agrawal and Labs' counsel, School was not able to complete the deposition. Labs agreed that this was unacceptable, and School and Labs entered into a stipulation, signed by this Court, which allowed School to continue Mr. Agrawal's deposition, and gave School seven days after the deposition was completed to move to compel in order to resolve any disputes "arising from Mr. Agrawal's deposition," making this motion timely[1]. ECF No. 177.  In the course of Mr. Agrawal's deposition, which occurred on March 11, it became apparent that he was not prepared to testify on his 30(b)(6) designated topics. Ex. A. Despite being designated on how Labs was perceived by its customers, suppliers, and partners (Topic 29)[2] and survey results or any assessments, scores, or ratings, Mr. Agrawal responded to questions within the scope of his topics with some variation of "I do not recall" over thirty times in the three hour deposition. See e.g. Ex. B at 14:3-19, 17:13-18:3; 29:22-30:11; 30:22-31:5; 31:22-32:3; 32:19-33:4; 36:5-19; 37:9-38:5; 55:7-13; 64:7-15; 64:17-65:13; 67:8-14. Mr. Agrawal repeatedly testified that he did not know even the basics of how surveys were conducted (Ex. B at 21:16-22:3), did not look at Labs Delighted customer feedback platform in preparation (Ex. B at 39:12-16), did not speak to Tejas Mehrotra (the Labs employee in charge of conducting the surveys and collecting the responses, who Mr. Mehrotra repeatedly said would have the information that School was asking about) (Ex. B at 39:17-19), and did not speak to Stephen Balaban (Labs' CEO, who Mr. Agrawal also repeatedly said would have responsive information) in preparation for the deposition (Ex. C at 11:8-15; 22:11-18). Mr. Agrawal took the position that although he was designated as a Rule 30(b)(6) designee ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. C at 9:6-24. Mr. Agrawal also testified that his only preparation involved "two to three hours" speaking with counsel. Ex. B at 8:14-9:24.  Despite Mr. Agrawal's utter lack of preparation, School will forgo another Rule 30(b)(6) deposition on these topics if Labs produces the requested documents that Mr. Agrawal testified may exist and that Labs has previously agreed to produce. Otherwise, by this Motion, School seeks an order compelling Labs to produce an additional witness on Topics 24 and 26-29. School, attempting to resolve these disputes, sent Labs an email mere hours after the deposition concluded inquiring into these documents. See Ex. D. One week later, Labs never responded, necessitating this present letter brief. Labs' refusal to meet and confer absent a formal court filing continues to be troubling. School respectfully requests that this Court order Labs to conduct a reasonable search as to the existence of the following document categories and produce any responsive documents it locates, or otherwise order Labs to produce a witness to

---

[1] Labs apparent argument below, that a 30(b)(6) deponent being utterly unprepared to testify on his designated topics is not a dispute "arising from Mr. Agrawal's deposition" is completely bewildering. That could not be anything other than a dispute arising from Mr. Agrawal's deposition.

[2] Labs' also appears to have completely misread Topic 29, which may be one possible explanation for how its deponent was so unprepared. The topic, which Labs never objected to, is "Your knowledge of any survey results or any assessment, score, or ratings that are positive or negative made by Nvidia or any other Labs' hardware or software supplier, manufacturer or partner regarding the quality of Labs Goods And Services, customer service, technical support, ***and/or how Labs is perceived by its Customers and/or its suppliers or partners***." (emphasis added). This topic explicitly includes how Labs is perceived by its customers, suppliers, and partners, and is not solely limited to non-customer surveys as Labs mistakenly represents.

1

testify on the designated topics 24 and 26-29.

### 1. The Carta Valuations, LLC Valuation

Labs produced a third-party valuation of its company ▮▮▮▮▮▮▮▮ Ex. E. This document references a separate valuation, ▮▮▮▮▮▮▮▮. Labs does not appear to have produced this ▮▮▮▮▮▮▮▮, and refuses to say whether it searched for it or is otherwise withholding it, despite the fact that Labs agreed to produce documents and communications concerning any third-party's valuation of Labs in response to RFP 122 (which this document is undoubtedly responsive to). Ex. F. When asked about whether Labs has this document in its possession, Mr. Agrawal testified that he did not know, but that he would ask Stephen Balaban. Ex. C at 11:8-15. This document is critical in this case, as Labs has pivoted its goods and services many times since its founding in 2012, and any third party valuations provide objective and time stamped summaries of the goods and services offered by Labs at the time of valuation. There is no burden associated with specifically searching for an individual and easily identifiable document. School respectfully requests that the Court to order Labs to conduct a reasonable search and produce the ▮▮▮▮▮▮▮▮.

### 2. NPS Survey Results After December 2020

Mr. Agrawal testified that Labs conducted NPS surveys after June 2020. Ex B at 34:3-19. In fact, Labs has produced NPS survey results of its customers through December 2020, which indicates that Labs continued and continues to conduct NPS surveys of its customers. Ex. G. Labs must produce any additional NPS survey results that it has in its possession, as they are directly relevant to the alternate causation theory that if Labs has experienced or is likely to experience any reputational or irreversible harm it is due to its own bad reputation, not any actions by or press articles about School. These types of documents are responsive to RFPs 5, 50, 135, and 149, all of which Labs agreed to produce documents in response to. Ex. F; Ex. H; Ex. I; Ex. J. It should be simple for Labs to search for and determine if there are any additional survey responses, as Mr. Agrawal testified that ▮▮▮▮▮▮▮▮. Ex. B at 37:9-38:24. School respectfully requests that the Court order Labs to search for and produce any additional NPS survey results that it has collected that are dated after December 2020.

### 3. Additional Documents Prepared for Internal Discussions and Discussions with Labs' Board of Directors Regarding Customer Satisfaction and Brand Perception

Mr. Agrawal testified that he had attended internal meetings at Labs that discussed NPS scores and customer satisfaction survey results, and did not know if Labs had discussed NPS scores or customer satisfaction survey results with its board of directors. Ex. B at 31:22-32:14. Mr. Agrawal similarly testified that he was not aware of whether Labs asks its customers about their perception of Labs' brand in these customer satisfaction surveys. *Id*. at 18:18-25. In light of this, School merely seeks confirmation that any documents prepared for or provided at any of these meetings, and any available underlying data, have already been produced, and that if Labs has any additional documents discussing customer, supplier or partner perception of Labs, its brand, or its products, that it will produce them. Labs has already produced at least one document prepared for such a purpose. Ex. K. As discussed above, these types of documents analyzing and explaining NPS results, customer satisfaction levels, and brand perception to relevant stakeholders, both within Labs and externally to investors, board members, and advisors, are directly relevant to the alternate causation theory that if Labs has experienced or is likely to experience any reputational or irreversible harm it is due to its own bad reputation, not any actions by or press articles about School. These types of documents are responsive to RFPs 5 and 135, both of which Labs agreed to produce documents in response to. Ex. F; Ex. H. School

respectfully requests that the Court order Labs to either search for and produce any additional documents it can locate, or otherwise confirm that no additional documents exist.

**LAMBDA LABS' POSITION**

Lambda School's motion is a Trojan horse to raise untimely issues for which the deadline has passed.  The deadline for Lambda School to file motions to compel on issues that arose during fact discovery was March 5, seven days after the close of fact discovery on February 26.  (L.R. 37-3.)  It knew about these alleged issues from Lambda's document productions in October and December 2020, but did timely not raise them by the March 5 deadline.  Instead, it now tries to pretend these "disputes [arose] from" the late-scheduled deposition of Lambda employee Mitesh Agrawal, which occurred on March 11, so it can try to leverage the later Court-ordered deadline for motions on issues "arising from" that deposition (ECF No. 177) to save its untimeliness.  But these document production questions did not "[arise] from Mr. Agrawal's deposition." (*Id.*)  Instead, Mr. Agrawal testified that he is ***not*** aware of any additional documents on these topics that were not already produced—so no new information from the deposition supports these untimely requests.  Late-scheduled depositions are not a catchall for Lambda School to do what it tried to do here: put *any* document in front of the final Lambda witness, elicit testimony that he knows nothing about it and does ***not*** know if other documents exist, and then claim its late request for more documents somehow "[arose] from" the deposition.

Nonetheless, Lambda agrees to produce most of what Lambda School now requests—namely the cited stock valuation (item #1) and any NPS surveys conducted since December 2020 (item #2).  Thus, the first two sections of this motion are moot.  The Court should deny Lambda School's final request—that Lambda search for and produce additional documents related to internal meetings regarding customer satisfaction and brand perception—as untimely and unduly burdensome.[3]

---

[3] The Court should also ignore Lambda School's bizarre attempt to transform this motion, which addresses only document production, into a motion to compel a further deposition of Mr. Agrawal.  Such issues are not properly before the Court.  But to be clear, Lambda School misrepresents the scope of the Rule 30(b)(6) notice on which Mr. Agrawal was designated, which do ***not*** include customer surveys.  It instead cites Topic 29, on which Mr. Agrawal was designated, related only to ***non-customer*** surveys: "Your knowledge of any ***survey results*** or any assessment, score, or ratings that are positive or negative ***made by Nvidia or any other Labs' hardware or software supplier, manufacturer or partner*** regarding the quality of Labs Goods And Services, customer service, technical support, and/or how Labs is perceived by its Customers and/or its suppliers or partners."  (Topic 29, Lambda School's Rule 30(b)(6) Deposition Notice to Lambda (emphasis added).)  In reply, Lambda School tries to shoehorn customer surveys into the vague words "how Labs is perceived by its customers," but this does not provide sufficient notice, as required by Rule 30(b)(6), that Lambda School sought testimony about customer *surveys*—especially where Lambda School expressly asked about other types of surveys in the same topic and omitted customer surveys from that list.  To the contrary, its decision to omit customer surveys from the list makes clear it was *not* asking about them.  It cannot re-write its Rule 30(b)(6) notice after the fact.

Moreover, Mr. Agrawal was not asked a single question about supplier, manufacturer, or partner surveys, nor whether Lambda "has any additional documents discussing … supplier or partner perception of Labs, its brand, or its products."  Thus, the Court should decline to order Lambda to produce such documents at this late date as the request for those documents ***cannot*** arise from a deposition at which they were never discussed.

1. September 2018 stock valuation

Lambda School did *not* learn about the document it now seeks—a ███████████████████████████████████████—from the deposition of Mr. Agrawal. Mr. Agrawal testified he had *no* knowledge of the document and did not know if it existed or not. (Lambda Labs Ex. A (Agrawal 3/10/2020 Rule 30(b)(1) Dep.) at 10:1-11:6 ███████████████████████████████████████████████████████████████████.) Instead, Lambda School learned of this valuation from a document (LAMBDALABS00034290) that Lambda produced *four and a half months ago*, on October 30, 2020—a document Mr. Agrawal had never seen. (*Id.*) Lambda School's motion to compel the September 2018 valuation clearly does not arise from Mr. Agrawal's deposition, and is thus untimely. Nonetheless, Lambda is producing the document because it was not burdensome to locate this single document.

2. NPS surveys conducted after December 2020

There is also no dispute "arising from" Mr. Agrawal's deposition regarding net promoter score (NPS) surveys.[4] Lambda produced all such survey results through December 2020, and Lambda School deposed the Lambda employee who oversees such surveys, Tejas Mehrotra, on January 6. Lambda School was aware from Mr. Mehrotra's deposition that Lambda conducts the surveys periodically, but did not ask for results of additional surveys conducted after Mr. Mehrotra's deposition. Had it done so, Lambda would have produced them. Instead, it again pretends this dispute arose from Mr. Agrawal's deposition, even though when Mr. Agrawal (who does not oversee the surveys and was not designated to testify about customer surveys) was asked to identify possible additional survey-related documents at Lambda, he identified only documents that were already produced in the case.[5] Further, Lambda School never asked Mr. Agrawal whether surveys were conducted *after* December 2020—which is what it seeks in this motion. Nonetheless, Lambda is investigating whether any additional NPS surveys were conducted after December 2020, and if so will produce the results because this targeted request is not burdensome.

3. Documents prepared for or presented at internal meetings regarding customer satisfaction and brand perception

Finally, there is no dispute arising from Mr. Agrawal's deposition regarding any documents prepared for or presented at internal meetings regarding customer satisfaction, brand perception, or NPS score. As noted above, *every* category of document Mr. Agrawal identified

---

Finally, Lambda School cannot plausibly claim Mr. Agrawal was unprepared: he prepared for over 12 total hours in advance of his individual and Rule 30(b)(6) depositions across two dates, reviewed emails, messages, and spreadsheets in preparation for the originally set depositions, sat for over 11 hours of testimony, and then was asked a litany of questions during the Rule 30(b)(6) deposition that were wholly unrelated to the five topics on which he was designated.

[4] NPS surveys are customer satisfaction surveys that Lambda periodically performs.

[5] Mr. Agrawal testified only that ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Lambda Labs Ex. B (Agrawal 3/10/2021 Rule 30(b)(6) Dep.) at 28:18-30:5.) All of these items have been produced.

regarding NPS scores and surveys was already produced in the case. Mr. Agrawal is ***not*** aware of any such documents prepared for meetings of Lambda's Board of Directors or shared with Lambda's investors,[6] and was never asked about discussions with "advisors." Thus, there is no basis to claim that a dispute "arose from" Mr. Agrawal's deposition regarding the completeness of Lambda's document production in this area. Instead, if Lambda School believed Lambda's document production was incomplete regarding documents prepared for and presented at internal meetings, the deadline for its motion to compel was March 5. The Court should therefore reject Lambda School's request as untimely.

Unlike the prior two topics, Lambda has not agreed to produce documents sought in this untimely request. First, it is a classic fishing expedition for additional documents that no one knows exists as Lambda already produced ***all*** of the categories of documents identified by Mr. Agrawal at his deposition. Second, it would be unduly burdensome to effectively re-start the custodial document collection process with new search terms three weeks after fact discovery has closed. The time for such requests has passed—especially where Lambda School has ***no*** evidence to suggest the materials it seeks even exist, because neither Mr. Agrawal nor any other Lambda witness testified that they do. The Court should deny its request.

| | |
|---|---|
| Rimon, P.C. | Morrison & Foerster LLP |
| By: */s/ Karineh Khachatourian* <br> Karineh Khachatourian <br> Nikolaus A. Woloszczuk <br> Oren J. Torten | By: */s/ Nicholas Herrera* <br> Jennifer Lee Taylor <br> Joyce Liou <br> Nicholas Herrera <br> Ryan Romain |
| Attorneys for Defendant, <br> LAMBDA INC. | Attorney for Plaintiff, <br> LAMBDA LABS, INC. |

---

[6] "Q. Does Lambda Labs discuss its NPS scores of its customers with investors? … A. I do not recall. … Q. Okay. Has Lambda Labs ever discussed its customer NPS scores with its Board of Directors? … A. I do not know the answer to that question." (Lambda Labs Ex. B (Agrawal 3/10/2021 Rule 30(b)(6) Dep.) at 30:7-11; 31:22-32:3.)

**ATTESTATION**

      I, Karineh Khachatourian, am the ECF user whose credentials were utilized in the electronic filing of this document.  In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that Nicholas Herrera concurred in the filing of this document.

                                                 */s/ Karineh Khachatourian*
                                                     Karineh Khachatourian